**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TONY J. BELL,** | ) | |
| Petitioner, | ) | **Civil Action No. 11-181 Erie** |
| | ) | |
| v. | ) | **Senior District Judge Maurice B. Cohill** |
| | ) | **Magistrate Judge Susan Paradise Baxter** |
| **MICHAEL W. HARLOW, et al.,** | ) | |
| Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

## II.    REPORT[1]

### A.    Relevant Background

Petitioner, Tony J. Bell, is a state prisoner currently incarcerated at the State Correctional Institution in Dallas, Pennsylvania. He is serving a total aggregate sentence of 10-20 years, which was imposed by the Court of Common Pleas of Erie County in 2006, following a jury trial in which he was convicted of two counts of Possession With Intent to Deliver ("PWID") (Counts 3 and 5), three counts of Possession of Controlled Substances (Counts 6-8), and three counts of Criminal Conspiracy (Counts 12-14). Assistant Public Defender Jack Grayer, Esquire, was Bell's trial attorney.

The Court of Common Pleas summarized the facts of Bell's case as follows:

> On July 28, 2005 officers of the City of Erie Swat team and Erie County Narcotics Task Force were issued a search warrant to search for suspected drugs at the residence and persons present at 943 East 23rd Street, 1st floor, Erie, Pennsylvania. During the search of

---

[1]    Respondents have submitted the Common Pleas Court's file and relevant transcripts. The documents in the Common Pleas Court's file are indexed and numbered 1 through 71. They shall be cited to as "CP Dkt. No. __ ."

the residence, police uncovered cash, drug paraphernalia, a weapon, and various drugs including 320 grams of marijuana, 14.9 grams of powder cocaine, 25.8 grams of crack cocaine, 12.7 grams of heroin, and 58.5 grams of ecstasy. The defendant, his two co-defendants, and another individual were present at the time of the search and were subsequently arrested and charged with five counts of possession with intent to deliver, five counts of possession, three counts of criminal conspiracy and a single count of possession of drug paraphernalia.

Officer Fetterman was a team leader of the Erie County SWAT team involved in the execution of the search warrant on July 28, 2005 at the residence located at 943 East 23rd Street. He proceeded to the front door of the residence, knocked on the door, announced they were police officers and that they had a search warrant. (Trial Transcript, Day One, 1/25/06, p. 99). After he knocked the defendant, Tony Bell, came to the door. Upon seeing the officers the defendant turned and fled towards the rear of the house. Id.

Three detectives of the narcotics unit, Donald Dacus, Matthew Fischer and Michael Chudubski, were responsible for rear containment of the residence at the time the search warrant was being executed. Their job was to allow SWAT team members to perform entry in the rear of the residence while they secured the back door in case anybody attempted to flee from it. Officer Dacus heard officers knock and announce themselves, a flashbang went off and windows broke, then the rear door opened and he saw the defendant and two other black males running towards them trying to flee out the back door. (Trial Transcript, Day Two, 1/26/06, pp. 25-26). At that time Officer Fischer drew his weapon and ordered the defendant and two other males to the ground. Id. at 86. They complied and laid down on the kitchen floor where they were handcuffed. Id. at 87. Officer Fischer noticed that where the defendant and two other males were on the ground there were stacks of money, one by Mr. Bell and one by Mr. Johnson. In the corner of the kitchen, within two arms reach of anybody in the kitchen, was a bag containing heroin and crack, another bag containing a larger amount of crack, and another bag containing crack cocaine. Id. There also was cash and crack cocaine scattered on the floor of the kitchen. Id. at 27.

After the residence was secured, Officer Dacus assisted in searching the kitchen. His search uncovered two boxes of razor blades, a digital scale, creatine powder, ecstasy, chunk crack, wax paper containing heroin, bulk chunk heroin, and crack cocaine. (T.T., Day Two, 1/26/06, pp. 35-48). He then proceeded to the backyard where he uncovered a bag of $845 in cash, a handgun, and marijuana. Id. at 49-55.

Officer Fischer found traffic citations issued to the defendant at a different address on July 17, 2005. Id. at 89-90. There was a combination of women's and men's clothing and shoes in a back bedroom. Id. at 94. The search of the other bedroom revealed a police scanner as well as more women's clothing and items, and $500 in a pair of jeans. (T.T., Day One, 1/26/06, pp. 115-116).

Timothy Burton testified that on July 28, 2005, prior to police executing the search warrant at the 943 East 23rd Street residence, he arranged to purchase drugs from a black male known as C-Note who was staying at 943 East 23rd Street. (T.T., Day Two, 1/26/06, pp. 7-8). Mr. Burton testified that in the late afternoon that he drove to East 23rd Street and saw C-Note walking down the street with another male and a female. Id. at 8. He stated he exited his car and left and was pulled over by police officers a few minutes later and confessed concerning the drug deal that had just taken place. Id. at 10. During the trial, Mr. Burton identified C-Note as being the co-defendant Kyle Johnson. Id. at 9. Officer Fischer was one of the officers that stopped Mr. Burton. During the surveillance of 943 East 23rd Street on July 28, 2005, Officer Fischer observed Mr. Burton approach three individuals who were walking down the street. Id. at 83. Officer Fischer identified the defendant, Tony Bell, as one of the individuals, and the two co-defendants as the other two individuals. Id. The officer then testified that he saw Mr. Burton and Kyle Johnson disappear behind the residence where he believed a drug deal was taking place. Id. Officer Fischer and another detective followed Mr. Burton as he left the residence. Id. at 84. After seven blocks they pulled over and determined that Mr. Burton had in fact purchased crack cocaine from the co-defendant Kyle Johnson. Id.

In addition to testifying regarding the incident that took place on July 28, 2005, Officer Dacus and Officer Fischer testified in the capacity of experts in drug investigation. On the basis of that testimony the jury could have found that [a] digital scale seized at the residence is most commonly used to weigh controlled substances, and is one of the most critical tools in a drug operation. Id. at 43. The razor blades that were seized are most commonly used to separate drugs into individual weight. Id. Creatine powder is an athletic supplement with a consistency and look of powder cocaine. Id. at 44. Creatine is a white granule, really fine, powdery substance that drug dealers will use to mix in with powder cocaine to increase their volume. It will take away from the purity or potency of the cocaine but it will increase volume and therefore profit. Id.

The drugs seized from the residence were packaged for resale and the quantity was not consistent with personal use, but rather with intent to sell. Id. at 105-111. The total street value of the drugs was approximately $15,000 to $18,000 and among all the evidence seized there was no use paraphernalia found. Id. at 112, 115.

(CP Dkt. No. 29, Commonwealth v. Bell, No. 3349 of 2005, slip op. at 8-11 (CP Erie Aug. 21, 2006)).

Pending before this Court is Bell's petition for a writ of habeas corpus [ECF No. 4], which he has filed pursuant to 28 U.S.C. § 2254. He claims that Attorney Grayer provided him with ineffective assistance of counsel for:

Claim 1        "failing to object to the testimony of witness Tim Burton and/or request a continuance or mistrial";

| Claim 2 | "failing to ascertain the alleged existence of a videotaped confession of a confidential informant"; and, |
|---|---|
| Claim 3 | failing to raise a viable challenge to his sentence; namely, that his prior PWID conviction was improperly used two to three times when imposing his sentence: to calculate his prior record score; as the trigger for the "prior felony drug enhancement statute"; and, as a factor that weighed in favor of running his two PWID sentences consecutively.[2] |

[ECF No. 4 at 5-8].

Bell raised these same three claims to the Superior Court of Pennsylvania during the litigation of his request for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq*. The Superior Court denied Claims 1 and 2 on the merits in a Memorandum issued on June 15, 2011. It denied Claim 3 because it concluded that it was "previously litigated." (CP Dkt. No. 70, Commonwealth v. Bell, No. 1647 WDA 2010, slip op. (Pa.Super. June 15, 2011)).

## B. Discussion

### 1. Standard of Review

This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under this statute, habeas relief is only available on the grounds that the petitioner's judgment of sentence was obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a). In addition, AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). It "requires federal courts collaterally reviewing

---

[2] Bell also claims that his direct appeal counsel, Tina Fryling, Esquire, was ineffective for failing to raise this challenge to the sentence in his direct appeal.

4

state proceedings to afford considerable deference to state courts' legal and factual determinations."

Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004).

As codified at 28 U.S.C. § 2254(d), AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was *adjudicated on the merits in State court proceedings* unless the adjudication of the claim–

(1) resulted in a decision that was *contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States*; or

(2) resulted in a decision that was based on an *unreasonable determination of the facts in light of the evidence presented in the State court proceeding*.

(Emphasis added).

Thus, under AEDPA, if a state court "adjudicated a claim on the merits," § 2254(d)'s standard of review applies. If the state court did not "adjudicate[ ] a claim on the merits," § 2254(d)'s standard of review does not apply and the federal habeas court applies a *de novo* review to the claim. See, e.g., Thomas v. Horn, 570 F.3d 105, 124 (3d Cir. 2009). If the state court misconstrues the federal claim, and, as a result, does not adjudicate it on the merits, then § 2254(d) does not apply. See, e.g., Appel v. Horn, 250 F.3d 203, 209-12 (3d Cir. 1999).

The U.S. Court of Appeals for the Third Circuit has explained how to apply AEDPA's standard of review at § 2254(d):

Consistent with Supreme Court precedent, we read § 2254(d) to require three distinct legal inquiries. See, e.g., Harrington v. Richter, — U.S. — , 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011). The first is whether the state court decision was "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). The second is whether the state court decision "involved an unreasonable application of" such law. § 2254(d)(1). And the third is whether the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented" to the state court. § 2254(d)(2).

The test for § 2254(d)(1)'s "unreasonable application of" clause is as follows: "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." <u>Rompilla v. Beard</u>, 545 U.S. 374, 380, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) (quoting <u>Wiggins v. Smith</u>, 539 U.S. 510, 519, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). For purposes of § 2254(d)(1), "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (internal quotations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Id.</u> at 75-76, 123 S.Ct. 1166 (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. <u>Andrade</u>, 538 U.S. at 75, 123 S.Ct. 1166.

The test for § 2254(d)(1)'s "contrary to" clause is whether the state court decision "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." <u>Brown v. Payton</u>, 544 U.S. 133, 141, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005) (citing <u>Williams</u>, 529 U.S. at 405, 120 S.Ct. 1495, and <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002)). Of course, a state court's resolution of a question that the Supreme Court has not resolved can be neither contrary to, nor an unreasonable application of, the Court's precedent. <u>See Kane v. Garcia Espitia</u>, 546 U.S. 9, 126 S.Ct. 407, 163 L.Ed.2d 10 (2005).

The test for § 2254(d)(2)'s "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. <u>See Rice v. Collins</u>, 546 U.S. 333, 338-339, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005)); <u>see</u> <u>also</u> <u>Simmons v. Beard</u>, 590 F.3d 223, 231 (3d Cir. 2009) ("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence."). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. <u>Cullen v. Pinholster</u>, — U.S. — [ ], 131 S.Ct. 1388, 1401-03, 179 L.Ed.2d 557 (2011).

<u>Roundtree v. Balicki</u>, 640 F.3d 530, 537-38 (3d Cir. 2011).

The Supreme Court also has stressed the "highly deferential" review that this Court must accord the state court's decision under § 2254(d):

> We have explained that "an unreasonable application of federal law is different from an incorrect application of federal law." Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id., at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." Id., at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than *de novo* review. Schriro v. Landrigan, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

Renico v. Lett, — U.S. — , 130 S.Ct. 1855, 1862 (2010). See also Harrington, 131 S.Ct. at 786 ("If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings…. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.").

Because the Superior Court denied Claims 1 and 2 on the merits, this Court's analysis of those two claims is governed by AEDPA's standard of review as codified at § 2254(d). The Superior Court did adjudicate Claim 3, in which Bell's contends that his counsel were ineffective for failing to raise a meritorious challenge to his sentence (that the trial court improperly double or triple counted his prior PWID in computing his sentence). As set forth below, it appears to this Court that the Superior Court misconstrued this claim during the PCRA proceeding, and, therefore, did not address it. Accordingly, the Court shall review Claim 3 *de novo*.

## 2.     The Law Governing Ineffective Assistance of Counsel Claims

Bell's ineffective assistance claims are governed by Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, Bell must show that his counsel's representation fell below an objective standard of reasonableness.  466 U.S. at 688; see also Williams, 529 U.S. at 390-91.  The law presumes that counsel was effective:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel's was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Id. at 689 (internal citations and quotations omitted).  The U.S. Court of Appeals for the Third Circuit has explained that it is "only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance."  United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997) (quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

Strickland also requires that Bell demonstrate that he was prejudiced by his counsel's alleged deficient performance.  This requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial or his appellate] proceeding would have been different."  Id. at 694.  As the Third Circuit Court recently explained:

> [The petitioner] "need not show that counsel's deficient performance 'more likely than not altered the outcome of the case' – rather, he must show only 'a probability sufficient to undermine confidence in the outcome.'" Jacobs v. Horn, 395 F.3d 92, 105 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 693-94).  On the other hand, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding."

8

> Harrington, 131 S.Ct. at 787 (citing Strickland, 466 U.S. at 693).  Counsel's errors must be "so serious as to deprive the defendant of a fair trial."  Id. at 787-88 (citing Strickland, 466 U.S. at 687).  *The likelihood of a different result must be substantial, not just conceivable.*  Id.

Brown v. Wenerowicz, 663 F.3d 619, 630 (3d Cir. 2011) (emphasis added).

The Superior Court applied the correct legal standard when it evaluated Bell's ineffective assistance of counsel claims at Claims 1 and 2.  (CP Dkt. No. 70, Bell, No. 1647 WDA 2010, slip op. at 4-5 (citing Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999) (legal standard for evaluating ineffective assistance claims in a PCRA proceeding is the same as the federal Strickland standard)).  Therefore, the Superior Court's adjudication of those claims passes federal habeas review under the "contrary to" clause of § 2254(d)(1).  See, e.g., Williams, 529 U.S. at 406.

Thus, the only remaining question for the Court with respect to Claims 1 and 2 is whether the Superior Court's adjudication of either of them was an "unreasonable application of" Strickland or an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  In conducting this analysis, the Court is mindful that:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.  The standards created by Strickland and § 2254(d) are both "highly deferential," [Strickland, 466 U.S.] at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [Knowles v. Mirzayance, 556 U.S. at —, 129 S.Ct. 1411, 1420 (2009)].  The Strickland standard is a general one, so the range of reasonable applications is substantial.  556 U.S., at —, 129 S.Ct. at 1420.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  *When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Harrington, 131 S.Ct. at 788 (emphasis added).

### (3)    Claim 1 – Timothy Brown's Testimony

On January 23, 2006, which was two days before Bell and his co-defendants' trial, Assistant District Attorney Roger M. Bauer, Esquire, provided the following notice to Attorney Grayer and the other defendants' counsel pursuant to Rule 404(b) of the Pennsylvania Rules of Evidence: "The Commonwealth intends to introduce evidence through an individual named Tim Burton who would indicate that hours before the execution of the search warrant at 943 East 23rd Street … Tim Burton did purchase crack cocaine from defendant Kyle Johnson, aka C-Note." [CP Dkt. No. 48, Ex. B]. Bell asserts that the prosecution "coached Burton to implicate" him, and "such testimony was neither disclosed to [the defense] prior to trial … [or] appropriately disclosed [in] the course of trial." [ECF No. 4 at 5].

In rejecting this claim, the Superior Court held:

Appellant first claims that trial counsel should have objected and/or asked for a continuance when, two days prior to trial, the Commonwealth informed Appellant, as well as his two co-defendants, that Tim Burton ("Burton"), a person detained after buying contraband from the house that was later searched, would testify at trial. According to Appellant, Burton was "mechanized" by the Commonwealth "to implicate Appellant as a cohort of [one of the co-defendants]." Appellant's Brief at 41. Appellant claims that the late disclosure that Burton would testify caused him to be "ambushed" at trial because [Burton] perjured himself[.]" Id. at 45. We disagree.

The PCRA court found no merit to Appellant's claim:

[Appellant] maintains that trial counsel was ineffective for not objecting to the testimony of [Burton] at trial…. It appears that [Appellant] did not expect to be incriminated by Burton's testimony and claims he was "ambushed" at trial. This is also untrue because Tim Burton was listed as a witness for the Commonwealth prior to trial, thus [Appellant] and his trial counsel had notice and were not ambushed.

PCRA Court Opinion and Order, 9/17/10, at 3.

Our review of the record supports the trial court's conclusions. Contrary to Appellant's claim, because Burton's identity as a witness was disclosed prior to trial, no discovery

violation occurred.  See generally, Commonwealth v. Bonacurso, 445 A.2d 1175 (Pa. 1983).  As characterized by PCRA counsel in his no-merit letter, Burton was vigorously cross-examined at trial by a co-defendant's counsel with regard to any motive or bias, whether the Commonwealth promised him anything in return for his testimony, and Burton's prior *crimen falsi* conviction.  Appellant does not proffer any additional information that trial counsel should have elicited from Burton.  Moreover, on appeal Appellant proffers no evidence impeaching Burton's testimony that may have been discovered had trial counsel been granted a continuance.  Thus, for all of these reasons, Appellant's first claim of ineffectiveness lacks merit.

(CP Dkt. No. 70, Bell, 1647 WDA 2010, slip op. at 5-6 (bracketed text in original)).

Bell has not demonstrated that the Superior Court's adjudication was an "unreasonable application of" Strickland or an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  The defendants received notification that Burton would testify two days before trial.  Bell has not explained why that was not sufficient time for his defense to prepare for Burton's testimony, why a continuance was required, or what meritorious objection his counsel, Grayer, should have made regarding Burton's testimony.  Moreover, Kyle Johnson's attorney, Vincent Nudi, Esquire, interviewed Burton prior to the trial and thoroughly cross-examined him.  There is nothing in the record to show that a continuance would have provided Bell's defense with any more information or more favorable evidence than that which was gained through Nudi's pre-trial discussion and cross-examination of Burton.

Finally, Bell has failed to identify how he was prejudiced.  Although Burton's testimony was damaging to his co-defendant Johnson, it was not particularly detrimental to Bell since Burton was unable to identify him.  (Trial Tr., Day 2, at 5-22).  He simply has not shown "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial] proceeding would have been different."  Strickland, 466 U.S. at 694.

Based upon all of the forgoing, Claim 1 should be denied.

### 4.    Claim 2 – The Confidential Informant

In his next claim, Bell contends that Grayer was ineffective for:

> failing to ascertain the alleged existence of a videotaped confession of a confidential informant. At the preliminary hearing police officer-affiant testified that the very probable cause to arrest and charge Appellant came from an alleged existence of a videotaped confession of a confidential informant identifying Appellant and his alleged role. However, the affidavit of probable cause and reports generated by police contradicted such testimony. And as a result showed official police misconducts and falsities that were omitted in total reckless disregard of the truth, warranting a right to produce or confront the "phantom ghost" C.I.

[ECF No. 4 at 6].

This claim can provide Bell with no relief because he must show that his *present custody* is unconstitutional. 28 U.S.C. § 2254(a) ("a district court shall entertain an application for a writ of habeas corpus in behalf of a person *in custody pursuant to the judgment of a State court* only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.") (emphasis added). He is in custody pursuant to the judgment of sentence issued after his trial, and thus he must show that Grayer's ineffectiveness affected the *outcome of his trial* – not his preliminary hearing. The Superior Court similarly held that Bell was not entitled to post-conviction relief on this claim since he could not demonstrate prejudice as to the outcome of his trial. (CP Dkt. No. 70, Bell, No. 1674 WDA 2010, slip op. at 7 ("Having been convicted of multiple drug offenses beyond a reasonable doubt by a jury, Appellant cannot complain of any alleged error at his preliminary hearing.")). The Superior Court's adjudication was neither an "unreasonable application of" Strickland nor an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

It may be that Bell is claiming that Grayer's alleged failure to obtain the confidential informant's videotape in some way impacted his defense at trial. To the extent that that is his claim, it should be denied. After the preliminary hearing, Grayer filed a motion in which he sought production of the

confidential informant's videotaped statement. (CP Dkt. No. 6). During a hearing on that motion, the prosecutor responded that the Commonwealth was not going to call the confidential informant at the trial. The prosecutor also stated: "we have a privilege to keep him confidential, and we don't believe we have to turn over any evidence that could reveal the identity of the informant." (Pretrial Motion Hr'g at 4). The trial court then denied the defense motion, concluding: "[a]bsent them calling the CI as a witness, there is no need to have a videotaped statement turned over to you of somebody they are not going to call as a witness." (Id.) Bell has neither alleged nor demonstrated that the prosecution changed its mind and presented the testimony of the confidential informant at his trial. He simply has not shown that Grayer was ineffective regarding matters related to the confidential informant's videotaped statement, or that he suffered any prejudice.

Based upon all of the foregoing, Claim 2 should be denied.

### 5.    Claim 3 – Sentencing

#### (a)    Background

Bell's final claim is regarding the sentences he received for his PWID convictions, in violation of 35 P.S. § 780-113(a)(30) of "The Controlled Substance, Drug, Device and Cosmetic Act." Those counts are Count 3 (PWID of 25.8 grams of cocaine) and Count 5 (PWID of 12.7 grams of heroin).

Bell was convicted in 1996 of a PWID, and that conviction was used to calculate his prior record score of 3. In addition, in accordance with 18 Pa.C.S. § 7508(a) (effective July 10, 2003 to July 30, 2013), that prior PWID triggered applicability of the mandatory minimum sentence of 5 years for his PWID convictions at Counts 3 and 5.[3] As a result, the court sentenced him at each PWID count to a term of 5-10 years, which was in the Standard range. (CP Dkt. No. 14B). The court had the discretion

---

[3]        Bell's Guideline Sentence Forms reflect that at Count 3, the trial court applied the mandatory minimum of 5 years pursuant to 18 Pa.C.S. § 7508(a)(3)(ii). At Count 5, it applied the mandatory minimum of 5 years pursuant to 18 Pa.C.S. § 7508(a)(7)(ii). (CP Dkt. No. 14B).

to impose the PWID sentences to be served consecutively, and it did just that.  Accordingly, Bell's total aggregate sentence is 10-20 years of incarceration on the PWID convictions.

After the trial court imposed the sentence, Bell, through Grayer, filed a motion for reconsideration/modification of it.  In that motion, it was argued:

17.    The mandatory enhancement was increased at counts 3 and 5 because of defendant's prior conviction for PWID.

18.    The applicable statute for the authority to impose a mandatory minimum with enhancement for prior conviction is 18 PSC sect. 7508(a)(2)(ii) [sic] (Schedule II-crack) and (7)(ii) (heroin).

19.    Unlike prior record score, the undersigned finds no statutory authority to permit the use of a prior PWID conviction more than once to enhance two mandatory sentences under the same docket; the court used the prior PWID twice as a sentencing factor.

(CP Dkt. No. 15 at 3).  The trial court denied the motion on March 26, 2006.  (CP Dkt. No. 18).  In its subsequent Rule 1925(b) Opinion, it explained:

Pursuant to 18 Pa.C.S.A. § 7508(A.1), a defendant with one or more prior convictions under section 13(a)(14), (30) or (37) of The Controlled Substance, Drug, Devise and Cosmetic Act is subject to a mandatory minimum sentence.  In this case, the pre-sentence investigation report indicated that the defendant had been convicted of possession with intent to deliver cocaine at docket 720 of 1997, triggering applicability of the mandatory minimum at this docket for both convictions of PWID.  The Supreme Court of Pennsylvania has articulated that 18 Pa.C.S.A. § 7508,

… specifically focuses on a defendant's prior "convictions" at the time of sentencing, and makes no distinction between convictions that arise from a multiple count complaint, or a separate complaint.  We are bound by the unambiguous language of the statute and cannot read language into it that simply does not appear.  1 Pa.C.S.A. § 1921(b).  The working of the statute is unambiguous, and clearly requires that as long as at the time of sentencing, a defendant "has been convicted" of another qualifying "offense," the defendant shall receive the enhanced sentence.

Commonwealth v. Vasquez, 562 Pa. 120, 753 A.2d 807 (2000); see also Commonwealth v. Bell, 2006 PA Super 131, 2006 Pa.Super. LEXIS 1073 (2006).  Here, each count of PWID was a separate and distinct possession that required the imposition of a mandatory minimum of five (5) years; therefore, such a sentence was not excessive or unreasonable.

14

> In light of the quantity and diversity of drugs involved, imposing consecutive sentences
> for defendant's repeat conduct was a proper exercise of discretion.

(CP Dkt. No. 29, <u>Commonwealth v. Bell</u>, No. 3349 of 2005, slip op. at 6-7 (CP Erie Aug. 21, 2006)).

Assistant Public Defender Tina M. Fryling, Esquire, represented Bell in his direct appeal. She raised several claims on Bell's behalf, including the same claim that Grayer had made in the post-sentence motion: that the trial court had erred because it "utiliz[d] a prior PWID conviction to enhance two mandatory sentences under the same docket." (CP Dkt. No. 22 at 2).

The Superior Court affirmed Bell's judgment of sentence in a 2-1 Memorandum issued on December 7, 2007. With respect to the claim discussed above, the panel majority of the Superior Court determined it to be waived because it was not supported by legal and factual support. (CP Dkt. No. 32, <u>Commonwealth v. Bell</u>, No. 703 WDA 2006, slip op. at 7-8). Judge Klein issued a dissenting Memorandum, in which he stated that it was his belief that the trial court had erred when it issued the sentences at Counts 3 and 5. In pertinent part, Judge Klein wrote:

> Because of Bell's prior conviction for possession with intent to deliver (PWID), the trial court applied the mandatory minimum of 5 to 10 years to each count of PWID [Counts 3 and 5] in this case. The trial court then decided to run the sentences consecutively, rather than concurrently, even though the instant charges arose from the same criminal transaction. The trial court had the benefit of a presentence report, which indicated that Bell's previous PWID conviction was already factored into his prior record score. The prior conviction was also the basis for the imposition of the mandatory minimum. Yet one of the primary reasons proffered by the trial court for enhancing Bell's sentence was the fact of his prior conviction. (<u>See</u> Trial Court Op., 8/21/06, at 5 (noting that Bell "had been previously convicted of similar criminal activity"); N.T. Sentencing, 3/3/06, at 9-10 (admonishing Bell for "ha[ving] done this before").) *Thus, Bell was effectively punished twice for his past conviction, which is impermissible. <u>See Commonwealth v. Young</u>, 922 A.2d 913, 917 n.8 (Pa.Super. 2007).*

(<u>Id.</u> at 20-21 (emphasis added)).

Surely inspired by Judge Klein's dissenting opinion, one of the claims that Bell raised in his subsequent PCRA motion was that his previous counsel, Grayer and Fryling, were ineffective for failing to object to the sentences imposed at Counts 3 and 5 because:

> [his] prior felony convictions for drug related crimes was used to punish [him] two to three times during sentencing. His record was used to calculate his prior record score (1st time); used to impose the drug enhancement statute (2nd time); and used as an aggravating circumstance [to impose consecutive sentences at Counts 3 and 5] (3rd time)."

(CP Dkt. No. 54 at 3. See also CP Dkt. No. 34 at 7, "defendant's prior conviction was already factoring into his prior record score. However, that same conviction … was also the basis for the imposition of the prior felony drug enhancement statue [sic]. And yet, again, the prior conviction, which was, above, used twice to punish the defendant, was used a *third* time as an aggravating element in running both of the defendant's enhanced drug convictions consecutive to one another. Thus, the defendant was, effectively punished *three* times for his past conviction, which is impermissible." See Commonwealth v. Young, 922 A.2d 913, 917 n.8 (Pa.Super. 2007). See also Commonwealth v. McMullen, 530 A.2d 450 (Pa.Super. 1987)." (emphasis in original); CP Dkt. No. 58 at 10 (same)). This is the same claim that Bell is raising to this Court in the instant petition.

On September 17, 2010, the PCRA issued an opinion in which it denied Bell's PCRA motion. (CP Dkt. No. 59, Bell, No. 3349-2005, slip op. (CP Erie Sept. 17, 2010)). In denying this claim, the PCRA Court made what appears to this Court to be two errors. First, the PCRA Court concluded that the underlying challenge that Bell was raising regarding the sentences imposed at Counts 3 and 5 was "the very same issue" that he had raised in his direct appeal. (Id. at 4). That assessment is incorrect. As set forth above, in his direct appeal Bell's claim was that the trial court erred when it considered his prior PWID conviction to trigger the mandatory minimum sentence for *both* Count 3 and Count 5 pursuant to 18 Pa.C.S. § 7508(a). His assertion was that the mandatory minimum should have applied to only one

16

of those PWID counts. (See CP Dkt. No. 22 at 2; CP Dkt. No. 32, Bell, No. 703 WDA 2006, slip op. at 7). That is a different claim from the challenge Bell was advancing in his PCRA motion, which was that Grayer (at sentencing) and Fryling (on direct appeal) were ineffective for failing to argue that the trial court improperly considered his prior PWID "to punish [him] two to three times during sentencing… [To] calculate his prior record score (1st time); … to impose the drug enhancement statute (2nd time); and … as an aggravating circumstance [to impose consecutive sentences at Counts 3 and 5] (3rd time)." (CP Dkt. No. 54 at 3. See also CP Dkt. No. 34 at 7 and CP Dkt. No. 58 at 10).

The second error by the PCRA Court was its statement that the Superior Court, in its direct appeal decision issued on December 7, 2007, *"did not find trial counsel to be ineffective*." (CP Dkt. No. 59, Bell, No. 3349-2005, slip op. at 4). In Pennsylvania, a defendant may not litigate ineffective assistance of trial counsel claims on direct appeal. Such claims must be raised in a PCRA proceeding. Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002). Bell did not raise an ineffective assistance claim on direct appeal, and the Superior Court made no ruling as to the effectiveness of either Grayer and/or Fryling in its December 7, 2007, decision.

Bell, who was proceeding *pro se* in his post-conviction appeal to the Superior Court, argued that the PCRA Court had erred in its analysis of his claim and pointed out that under Grant he was not able to raise his ineffective assistance claims until the PCRA proceeding. (CP Dkt. No. 63). The Superior Court, however, construed Bell's claim as simply asserting that "that trial and appellate counsel were ineffective for failing to object and/or challenge the discretionary aspects of his sentence." (CP Dkt. No. 70, Bell, No. 1647 WDA 2010, slip op. at 7). It did not recognize that Bell was in fact claiming that there was an issue of arguable merit involving the double or triple counting of his prior PWID at his sentencing that should have been addressed by his previous counsel. The Superior Court denied Bell's

claim as previously litigated because "the panel majority [on direct appeal] rejected his challenge to the discretionary aspects of his sentence." (Id.)

Based upon the above summary, the Court concludes that the state courts misconstrued Bell's PCRA claim and, therefore, failed to consider his allegation that Grayer and Fryling were ineffective for failing to raise a meritorious challenge to the sentence imposed. Accordingly, this Court shall review this claim *de novo*.

### (b) Analysis

To resolve this claim, this Court must determine whether the trial court impermissibly "punished" Bell two or three times for his prior PWID conviction by using it to: (1) calculate his prior record score; (2) apply "the prior felony drug enhancement statute"; and, (3) considering it as a factor that weighed in favor of imposing consecutive sentences at Counts 3 and 5. After reviewing Commonwealth v. McMullen, 530 A.2d 450 (Pa.Super. 1987),[4] which is the case relied upon by both Judge Klein (in his dissenting opinion on direct appeal) and Bell in his subsequent PCRA litigation, this Court concludes that the sentencing court did not err. Accordingly, Grayer and Fryling were not ineffective for failing to raise a meritless claim.

Like Bell, the petitioner in McMullen, Colleen McMullen, had been convicted previously of a PWID in violation of 35 P.S. § 780-133(a)(30). Pursuant to 35 P.S. § 780-115(a), the maximum sentence applicable to her was increased because she had a prior PWID conviction. McMullen, 530

---

[4]    In his dissenting opinion, Judge Klein cited to footnote 8 of Commonwealth v. Young, 922 A.2d 913 (Pa.Super. 2007). In that case, the Superior Court observed in *dicta* that, if it had not granted the defendant relief for other reasons, it would have held that, in accordance with Commonwealth v. McMullen, 530 A.2d 450 (Pa.Super. 1987), the defendant's counsel was ineffective for failing to challenge the trial court's application of a prior felony drug conviction enhancement statute to the defendant because to do so "constituted a double counting of that previous conviction, since the trial court had already considered the prior felony drug conviction in determining appellant's prior record score." Young, 922 A.2d at 918, n.8 ("pursuant to Commonwealth v. McMullen, 365 Pa.Super. 556, 530 A.2d 450 (1987), were we to consider appellant's argument that imposition of the sentencing enhancement statute resulted in the double counting of his previous felony conviction, we would conclude that it did."). Thus, McMullen is the case that must be examined to determine whether Bell's underlying claim challenging his sentence has merit.

A.2d at 560 (quoting the version of § 780-115(a) in effect at the time ("Any person conviction of a second or subsequent offense under clause (30) of subsection (a) of section 13 of this act …, may be imprisoned for a term up to twice the term otherwise authorized[.]").  Because § 780-115(a)'s maximum sentence enhancement was trigger by McMullen's prior PWID conviction, she argued that her sentencing court should not have utilized it to also calculate her prior record score.  She also contended that her trial counsel had been ineffective for failing to raise the appropriate objection.  McMullen, 530 A.2d at 452-53.

The Superior Court agreed with McMullen, vacated her sentence, and remanded for resentencing.  It determined that the "double counting" of which McMullen complained was prohibited by 204 Pa.Code. § 303.7(f), which provided:

> (f) Past convictions.  When the maximum sentence applicable to the current offense is dependable upon past convictions, those convictions shall not be used in computing the prior record score.  For example:  retail theft, some violations of The Controlled Substance, Drug, Device, and Cosmetic Act (35 Pa.C.S. §§ 780-101-780-144), and some motor vehicle offenses are subject to a longer period of confinement when the defendant has been previously convicted of the same offense.

Id. at 452 (quoting 204 Pa.Code. § 303.7(f)).  Since the maximum sentence applicable to McMullen's current offense was increased because of her past PWID conviction, the plain language of § 303.7(f) prohibited using her prior PWID to also calculate her prior record score.  Id. at 452-53.

Importantly, the provision at § 303.7(f) has been amended several times since the Superior Court decided McMullen in 1987.  In an amendment that went into effect in 1988, the General Assembly *expressly excluded offenses under The Controlled Substance, Drug, Device and Cosmetic Act, from falling within § 303.7(f)'s "double counting" prohibition*.  204 Pa.Code § 303.7(f) (effective April 25, 1988).  See also 17 Pa.Bulletin 5016.  In 1997, the General Assembly rewrote the provision and recodified it at 204 Pa.Code § 303.8(g) to state:

Excluded offenses. The following types of offenses shall not be scored in the Prior Record Score:

(1) Summary offenses, violations of local ordinances, and dispositions under Pa.R.Crim.P. Rules 175-186 (relating to accelerated rehabilitative disposition), 35 P. S. § 780-117 (relating to probation without verdict) or 35 P. S. § 780-118 (relating to disposition in lieu of trial or criminal punishment), shall not be used in computing the Prior Record Score.

(2) Any prior conviction which contributed to an increase *in the grade of a subsequent conviction* shall not be used in computing the Prior Record Score.

204 Pa.Code § 303.8(g) (emphasis added) (effective June 13, 1997). This amendment, in relevant part, changed the text by replacing "maximum sentence applicable to the current offense" with "grade of a subsequent offense," a phrase similar to that used in the original text of the guidelines. See 27 Pa.Bulletin 1252. The Commission on Sentencing, when it submitted the revised sentencing guidelines for consideration by the General Assembly, explained:

The original text was revised in 1986, primarily to accommodate drug convictions. *However, the text was revised again in 1988, at which time the drug convictions were excluded from the policy.* This proposal simplifies the policy by returning to the original term. The proposal would also extend the policy so that any previous conviction that increases the grade of an offense, either a current or previous offense, would be excluded from calculation of the Prior Record Score. *This proposal removes the 'double counting' of a conviction, which was the premise of this policy.*

27 Pa.Bulletin 1253 (emphasis added).

By July of 2005, the month that Bell committed his offenses, § 303.8(g) provided:

(g) Excluded offenses, charges and convictions. *The following types of offenses, charges and convictions shall not be scored in the Prior Record Score*:

(1) Summary offenses, violations of local ordinances, direct or indirect contempt of court, violation of protection from abuse orders, and dispositions under Pa.R.Crim.P. Rules 300-320(related to accelerated rehabilitative disposition, 35 P.S. § 780-117 (relating to probation without verdict) or 35 P.S. § 780-118 (relating to disposition in lieu of trial or criminal punishment).

(2) A charge which is nolle prossed, dismissed, or on which a demurrer is sustained.

(3) Any prior conviction which contributed to an increase in the grade of a subsequent conviction, *except for* prior Driving Under the Influence of Alcohol *or Controlled Substance convictions*.

204 Pa.Code § 303.8(g) (effective June 3, 2005) (emphasis added).

Nothing in the version of § 303.8(g) in effect during the relevant time prohibited the trial court from using Bell's prior PWID conviction to calculate his prior record score, even though that prior conviction triggered the mandatory minimum at 18 Pa.C.S. § 7508(a) and increased the applicable maximum sentence pursuant to 35 P.S. § 780-115. Therefore, the error that occurred in <u>McMullen</u> did not occur in Bell's sentencing, and neither Grayer nor Fryling were ineffective for failing to raise a claim based upon the alleged impermissible "double counting" of the prior PWID conviction.

Bell also asserts that the sentencing court erred in using his prior PWID conviction for a "third" time when it considered it as a factor to support the imposition of consecutive sentences. He has not directed this Court to any authority to support that assertion. Nothing in either <u>McMullen</u> or <u>Young</u>, the two cases he relied upon in his PCRA proceeding, supports the proposition that the sentencing court could not consider his past criminal history as a factor when it exercised its discretion and imposed the sentence at Count 5 to be served consecutive to that at Count 3.

Based upon all of the forgoing, Bell has not demonstrated that Grayer and Fryling were ineffective for failing to challenge the double or triple counting of his prior PWID in computing his sentences at Counts 3 and 5. Therefore, even under a *de novo* review, Bell is not entitled to habeas relief on this claim.

## C.      Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  When the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Id.  Applying those standards here, jurists of reason would not find it debatable whether Bell's claims should be denied.  Accordingly, a certificate of appealability should be denied.

**III.     CONCLUSION**

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Failure to do so will waive the right to appeal.  Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: January 22, 2013

cc:     The Honorable Maurice B. Cohill
        Senior United States District Judge